IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYY SPIRITS, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>RUBYY, LLC,<br><br>    Defendant.<br>_____ / | No. C 09-00646 WHA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISQUALIFY AND VACATING HEARING** |

## INTRODUCTION

The essence of the problem at hand is that the same person is the founder of both litigant companies. After he left the first company and started the second, the first sued the second for trademark infringement. The founder now wants to disqualify long-time counsel for the first company on the theory that counsel once represented him as well (in different and closed matters). Counsel, however, has not changed sides in any way. It is the founder who has jumped ship. The disqualification motion has no merit.

## STATEMENT

Skyy Spirits, LLC commenced this action against Rubyy, LLC, for trademark infringement and dilution. The complaint alleges that Rubyy's "intentional use of Skyy's very strong and salient 'yy' feature in its 'Rubyy' mark infringes Skyy's mark as it is likely to cause an unwarranted association between [Rubyy's] product and [Skyy's] trademarks and confuse the public as to the source or affiliation of [Rubyy's] product" (First Amd. Compl. ¶ 1).

Rubyy's motion to disqualify Attorney James Wesley Kinnear as Skyy's counsel is based on its assertion that Attorney Kinnear "for many years enjoyed an attorney-client relationship with Maurice Kanbar" (Br. 3). Mr. Kanbar is not a party to this action. Kanbar is the trustee of a trust that owns Drinx, L.L.C., an entity that owns 80.95% of the interest in Rubyy (Dkt. No. 21).

Kanbar was the founder and longtime owner of Skyy. Prior to selling his interest in Skyy in 2002, Kanbar engaged Attorney Kinnear to represent the company and Kanbar personally in a variety of matters. Attorney Kinnear represented Kanbar in litigation regarding an apartment building not related to Skyy. He defended Skyy in two copyright actions relating to photographs of Skyy bottles, and simultaneously represented Kanbar in one of those actions where Kanbar was named as a defendant. Finally, he represented both Skyy and Kanbar in the sale of Kanbar's interest in the company to a subsidiary of Gruppo Campari in 2002. Those matters are closed.

## ANALYSIS

Under Civil Local Rule 11-4(a)(1), attorneys appearing before this Court must "comply with the standards of professional conduct required of members of the State Bar of California." Accordingly, the Court applies California law in this matter. *Concat LP & Chelator, LLC v. Unilever, PLC*, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004) (Illston, J.).

> When deciding whether disqualification is warranted, the court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

*Ibid.* (quotations and citations omitted). Because an attempt to disqualify the opposing attorney is often tactically motivated and disruptive to the litigation process, disqualification is a drastic measure that is generally disfavored. *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) (Hamilton, J.). Additionally, motions for disqualification "should be subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985). The party seeking disqualification bears a "heavy burden." *City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 851 (2006).

Rule 3-310(E) of the California Rules of Professional Conduct states:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

When "the facts involve successive representation, the 'governing test requires that the client demonstrate a substantial relationship between the subjects of the antecedent and current representations' in order to obtain disqualification of the target attorney." *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal. App. 4th 698, 705 (Ct. App. 2003) (*quoting Flatt v. Super. Ct. of Sonoma County*, 9 Cal. 4th 275, 283 (1994)).

To create a conflict requiring disqualification, "the information acquired during the first representation [must] be 'material' to the second; that is, it must be found to be directly at issue in, or have some critical importance to, the second representation." *Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 680 (Ct. App. 2004).

For the following reasons, the circumstances presented do not warrant disqualification of Attorney Kinnear. Disqualifying Skyy's longtime counsel in this action would serve only to unnecessarily prejudice Skyy without protecting any significant interest of Rubyy or Kanbar.

**1.    ATTORNEY KINNEAR'S RELATIONSHIP WITH SKYY.**

Attorney Kinnear was engaged as Skyy's counsel while Kanbar was still with Skyy. When Kanbar sold his interest in the company, Attorney Kinnear continued to represent Skyy. Any information that he gained from Kanbar relates to Skyy — not to Kanbar. Rubyy admits as much in a letter filed prior to the filing of this motion (Dkt. No. 47 at 2):

> Obviously, [Rubyy] does not contend, nor could it, that Mr. Kinnear is disqualified from representing the interests of any party adverse to [Rubyy] because of his prior representation of Mr. Kanbar. For example, the protected information Mr. Kinnear acquired from his representation of Mr. Kanbar would have little or no relevance to any future disputes that another spirits company might have against [Rubyy].

Skyy asserts that Rubyy "seeks to disqualify Skyy's trial counsel because he knows too much about Skyy" (Opp. 3). This order agrees. Any counsel, not just Attorney Kinnear, would have access to Skyy's information regarding the value of its own trademarks. The fact that

3

1  Attorney Kinnear learned some of this information from Kanbar is irrelevant because the
2  information at issue is about the company — not about Kanbar.  If Attorney Kinnear had
3  continued to represent Kanbar after the latter's departure from Skyy, or after Kanbar became
4  involved with Rubyy, the situation would be entirely different — but that is not the case here.

5       Rubyy argues, despite having already stated that he would be free to represent any other
6  company in a dispute with Rubyy, that Attorney Kinnear should be disqualified for the
7  representation he provided to Kanbar, not the representation he provided to Skyy (Reply Br. 11).
8  Attorney Kinnear apparently represented Kanbar personally in three instances:  (1) in litigation
9  regarding an apartment building entirely unrelated to Skyy — Rubyy ignores this litigation in its
10 motion; (2) in a copyright action against Skyy that named Kanbar as a defendant; and (3) in the
11 sale of Kanbar's interest in Skyy in 2002 (Br. 4–6).  These matters are over and gone, and were
12 different from the case at hand.

13      The typical disqualification motion arises where an attorney accepts employment with a
14 *new* client in litigation adverse to a former client.  The concern is that the "professional
15 commitment" of a lawyer "is not furthered, but endangered, if the possibility exists that *the*
16 *lawyer will change sides* later in a substantially related matter."  *Trone v. Smith*, 621 F.2d 994,
17 998 (9th Cir. 1980) (emphasis added).  Every decision cited by Rubyy involves a lawyer who has
18 obtained a new client that is adverse to a former client.  But in this action, *Attorney Kinnear never*
19 *changed sides* — Skyy is not a *new* client.  Kanbar is the one who jumped ship.

20      **2.**     **NO SUBSTANTIAL RELATIONSHIP.**

21      The Ninth Circuit has held that "the substantial relationship test is inapplicable when the
22 former client has no reason to believe that information given to counsel will not be disclosed to
23 the firm's current client."  *Christensen v. United States Dist. Ct. for the Cent. Dist. of Cal.*,
24 844 F.2d 694, 699 (9th Cir. 1988).  Here, because his interests were the same as Skyy's prior to
25 his sale of the company, Kanbar had no reason to believe that any information he gave to
26 Attorney Kinnear would not be shared with Skyy.

27      Even if the "substantial relationship" test were to be applied here, the result would weigh
28 against disqualification.  To create a conflict requiring disqualification, "the information acquired

4

during the first representation . . . must be found to be directly at issue in, or have some critical importance to, the second representation." *Farris*, 119 Cal. App. 4th at 680. In support of its argument that a "substantial relationship" exists here, Rubyy points to: (1) "confidential discussions [between Attorney Kinnear and Kanbar] concerning the [value of and] goodwill associated with the Skyy Marks;" (2) the fact that Attorney Kinnear "spearheaded the effort to collect information concerning all outstanding legal claims relating to . . . the Skyy Marks;" and (3) Attorney Kinnear's representation of "Kanbar personally in a copyright lawsuit . . . pertaining to pictures of a Vodka bottle bearing the Skyy Marks" (Reply Br. 7–8).

All of this information was acquired in representing Skyy and its officer Kanbar in the same matters. Kanbar owed a duty to Skyy to support Skyy in the matters. Conceivably, isolated comments made by Kanbar to counsel could overlap with isolated issues herein, such as the value of the Skyy mark. If counsel expects to be a potential witness to impeach Kanbar then he should step aside, but there is no indication he will be a potential witness on this record. This risk is so attenuated that it will not be used as a basis for disqualifying Skyy's long-time counsel.

### 3. DELAY AND PREJUDICE TO SKYY.

"It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *Trust Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). Rubyy was aware of Skyy's counsel when this action began in February 2009 — Attorney Kinnear filed Skyy's complaint. But Rubyy did not file a motion to disqualify until October 2009. Rubyy argues it delayed because settlement negotiations were ongoing, and that Skyy was alerted no later than May 2009 that Rubyy would seek disqualification (Reply Br. 3–5). The fact remains, however, that Rubyy did not actually file its motion until October. Meanwhile, the case schedule has been moving ahead and the fact-discovery cutoff is seven weeks away.

Rubyy asserts that it "would have been imprudent and counterproductive to file a disqualification motion while counsel were initially focused on mediating a resolution and pursuing an agreement to settle the dispute altogether" (*id.* at 5). This is not true. If Attorney

5

Kinnear's previous representation of Kanbar were as significant a concern as Rubyy now argues, it is inconceivable that Rubyy would have wanted to engage in settlement discussions while Skyy was represented by him — it would have been both prudent and productive to file a motion to disqualify as soon as possible. If Rubyy had filed this motion right away, the potential prejudice to Skyy would have been significantly reduced. But now the circumstances are different — substantial work has gone in to this case and the discovery deadline of December 31, 2009, is fast approaching.

Rubyy cites numerous decisions in which courts have granted motions for disqualification after delays significantly longer than the one present here. But delay is merely one of the factors considered by courts in determining whether or not to disqualify an attorney. *Concat*, 350 F. Supp. 2d at 814. All of the decisions Rubyy cites are based on their own unique circumstances and none is analogous to the situation present in this action.

Additionally, although the *length* of the delay in bringing a motion to disqualify is important, it is not dispositive:

> [I]t is also appropriate to consider such factors as when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred, and in particular whether the motion was delayed for tactical reasons; and whether disqualification would result in prejudice to the nonmoving party.

*Employers Ins. of Wausau v. Albert D. Seeno Constr. Co.*, 692 F. Supp. 1150, 1165 (N.D. Cal. 1988) (Lynch, J.). Here, Rubyy was aware of the conflict the day the action was filed and has been represented by counsel since that time; Rubyy's reason for the delay is not compelling, and disqualification at this stage would certainly prejudice Skyy.

Rubyy's eight-month delay, when considered in conjunction with the specific circumstances of this action — including the nature of the previous representation, the prejudice to Skyy, and Rubyy's willingness to deal with Attorney Kinnear in settlement negotiations — weighs heavily against disqualification.

**CONCLUSION**

This motion is largely a tactical gimmick.  Going forward, Rubyy would be well advised to focus on the merits.  Rubyy's motion for disqualification is **DENIED**.  The hearing scheduled for November 12, 2009, is **VACATED**.

**IT IS SO ORDERED.**

Dated:  November 9, 2009.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE